UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN M. TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:09CV01208 AGF |
| | ) | |
| UNKNOWN HIGGINBOTHAM, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Following three separate arrests, Plaintiff brought this action under 42 U.S.C. § 1983 against the arresting officers, Craig Higginbotham, Douglas Wiese, Mark Whitson, and Jason Law of the St. Louis County Police Department. Plaintiff claims that he was arrested without cause and with the use of excessive force in violation of the Fourth Amendment. He also asserts pendent tort claims under Missouri law. Defendants have moved for summary judgment on each of Plaintiff's claims, asserting that Plaintiff's claims fail as a matter of law and that they are entitled to qualified immunity. After careful review, the Court finds that Plaintiff has failed to introduce any evidence showing that a question of material fact exists in relation to his claims. Viewing the record in the light most favorable to Plaintiff, the Court finds that probable cause existed to arrest Plaintiff, that the use of force was constitutionally reasonable, and that Defendants are entitled to qualified immunity. Accordingly, the Court will enter judgment in favor of Defendants.

**Standard**

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir.), cert. denied, 528 U.S. 1063 (1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The Court is "'not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the

nonmoving party's claim.'" Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996) (quoting White v. McDonnell Douglas Corp., 904 F.2d 456, 458 (8th Cir. 1990)). When the nonmoving party fails to provide a statement of facts with citations to the record, that party fails to create a genuine issue of material fact. See id.; E.D. Mo. L.R. 4.01(E) ("All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.").

In this instance, Plaintiff has failed to file a statement of facts with citations to admissible evidence, and furthermore, he has failed to specifically controvert Defendants' statement of facts, which is supported by admissible evidence. As a result, the Court relies on Defendants' statement of facts for its factual findings.

**Background**

1. May 25, 2007, Incident

On May 25, 2007, at about 6:15 a.m., Defendant Higginbotham was on patrol in Kinloch, Missouri, operating a marked police vehicle. Higginbotham turned from Mable Avenue onto Lurch Street and observed a black male standing next to a parked car in front of 8145 Lurch. The black male was looking into the car when Higginbotham's vehicle approached. When he saw the police vehicle, he swiftly walked away from the parked car. The black male was later identified as Plaintiff.

Higginbotham drove by the area where Plaintiff had been standing, but he was no longer there. Higginbotham continued patrolling the area. Several minutes later, he turned onto Lurch from Martin Luther King Boulevard. Higginbotham again saw Plaintiff standing

next to the parked car at 8145 Lurch. Higginbotham knew that Lurch was located in a high crime area, with incidents of drug dealing, auto theft, and violent crime. Based on Plaintiff's behavior, he believed Plaintiff was going to tamper with the parked car.

Higginbotham pulled up next to Plaintiff, stopped his vehicle, got out, and approached him. When Plaintiff saw Higginbotham he turned and started to walk away. As Plaintiff walked away he started shaking his hands to the side in what appeared to be an aggressive manner, as if he were throwing punches. Plaintiff then stopped, turned around, and quickly approached Higginbotham.

At this time, St. Louis County police officer Jeffrey Parnas arrived at the scene to assist Higginbotham. Plaintiff stood a few feet in front of Higginbotham acting in an agitated manner by shouting expletives, making punching motions, and assuming a fighting stance. Higginbotham did not want to escalate the situation, so he stood with his feet shoulder width apart and with his hands in front of him.

Higginbotham told Plaintiff that they had received complaints for various crimes on Lurch, and Higginbotham asked Plaintiff if he lived in Kinloch. Plaintiff did not respond. Higginbotham asked Plaintiff if he had a state ID; Plaintiff replied, "I ain't got shit for you motherf------." Higginbotham asked Plaintiff if he had a name, and Plaintiff replied, "Not for you." Plaintiff continued to stand in an aggressive stance, as if he were going to attack Higginbotham. Based on Plaintiff's behavior, his refusal to identify himself, his location, and the time of day, Higginbotham suspected that he had committed or was about to commit

a crime. Higginbotham also believed that Plaintiff posed a safety risk to the residents who lived in the area.

Higginbotham told Plaintiff that because he would not identify himself he was directly interfering with his investigation. Plaintiff yelled, "I hate you motherf------ cops, yeah you, f--- you, I ain't telling you shit." Higginbotham then arrested Plaintiff for interfering with the duties of a police officer.

Higginbotham took Plaintiff to the St. Louis County Jail intake, where Plaintiff refused to give his name and pedigree information. While at the intake area, a staff nurse said she recognized Plaintiff from a previous booking, and she identified him. She remembered Plaintiff's name because he had previously become very aggressive during a nurse's examination.

Higginbotham ran a computer check on Plaintiff and found his pedigree information. He found that Plaintiff had two outstanding warrants from the Hazelwood Police Department for failure to appear. Higginbotham applied for a warrant application on Plaintiff for interfering with the duties of a police officer. No charges were issued against Plaintiff based on the incident.

2. May 31, 2007, Incident

On May 31, 2007, at approximately 2:08 p.m., Defendants Wiese and Whitson went to 8143 Lurch Street in Kinloch, Missouri, to investigate St. Louis County Police Department Bureau of Professional Responsibility ("BPS") Complaint 07-86 filed by Plaintiff. Whitson asked Wiese to accompany him for officer safety because of Plaintiff's criminal history. At

that time, Plaintiff had a failure to appear warrant for his arrest from the Hazelwood Police Department.

Upon arrival, Dorothy Trust answered the door and Wiese told her they were there to speak with Plaintiff. Dorothy Trust pointed to the sofa in the family room and said that Plaintiff was sleeping, she then let the officers inside the house.

When Plaintiff became aware of Wiese and Whitson's presence, he stood in front of the sofa. Whitson told him that they were there to investigate the complaint he made with BPS. Plaintiff stretched with both hands over his head and said he needed to use the bathroom. Plaintiff then turned to his left, placed his left hand into his pocket, and started to move to the bathroom at the rear of the residence.

Wiese and Whitson believed that Plaintiff may have been trying to hide a weapon in his pants pocket, so they ordered him to take his hand out of the pocket. Plaintiff did not comply, continuing to walk towards the rear of the residence. Wiese and Whitson then positioned themselves in front of and to the side of Plaintiff. Defendants asked Plaintiff again to remove his hand from his pocket, but Plaintiff did not comply. Whitson then told Plaintiff he was being detained and ordered him to move in front of the sofa.

When Plaintiff moved in front of the sofa, Whitson grabbed his arms from behind and Wiese moved towards Plaintiff's left side. Wiese saw a stack of U.S. currency bills sticking out of Plaintiff's left front pants pocket. Wiese then frisked Plaintiff's outer clothing for weapons and pushed the money back into Plaintiff's pocket.

Whitson reminded Plaintiff that they were there to talk about the complaint he had filed with BPS. Defendants escorted Plaintiff out of the house and onto the front porch because there were children in the residence. As Whitson talked with Plaintiff, Wiese asked Plaintiff what he was trying to conceal in his front pants pocket. Plaintiff then became agitated, called Defendants racist, and told them they had no right to be at his residence.

Because of Plaintiff's movement and agitation, Whitson told Plaintiff he was under arrest and reached for his handcuffs. Plaintiff then struck Whitson with his left elbow, causing Whitson to fall backwards. Plaintiff ran from the residence southward towards Lurch, and Wiese began to chase him. Wiese shouted at Plaintiff to stop running and that he was under arrest. Plaintiff continued to run eastbound on Lurch and Defendants chased him.

As Plaintiff ran, Defendants saw him reach into his pants pockets and then move his hands in and out of the pockets. Defendants saw several items fall on the ground as Plaintiff did this. Wiese saw Plaintiff's left hand drop a clear plastic bag onto the ground near 8127 Lurch.

Wiese shouted again to Plaintiff that he was under arrest and to stop running, but Plaintiff continued to flee. Wiese unholstered his department-issued Taser X-26, serial number X00-122389, and told Plaintiff to stop or he would use the Taser on him. Plaintiff continued to run southbound in a grassy area parallel to Lurch. Wiese then yelled, "Taser, Taser, Taser," and deployed the Taser once, striking Plaintiff in the back. Plaintiff did not stop running, but he slowed down. Wiese heard a clicking sound coming from the Taser,

possibly because the leads were not completely connected to Plaintiff. After about fifty feet of additional running, Plaintiff yelled and fell to the ground at 8109 Lurch.

When Plaintiff was on the ground, Wiese ordered him to put his hands to his side, which Plaintiff refused to do. Wiese told Plaintiff he would be Tasered again if he did not comply with the order. Whitson arrived and knelt onto Plaintiff's back in order to get Plaintiff's hands behind his back and handcuff him. Wiese did not Taser Plaintiff a second time.[1]

Wiese told Whitson where he saw Plaintiff throw the plastic bag onto the ground. At 8127 Lurch Whitson found a clear plastic bag containing several off-white rock-like substances, which he believed to be crack cocaine. Whitson found Plaintiff's drivers license about three inches from the bag. Wiese advised Plaintiff that he was under arrest for possession of crack cocaine and resisting arrest by flight.

Based on this incident, Plaintiff was charged with felony possession of a controlled substance. Plaintiff pled guilty to the charge and was sentenced to eight years' imprisonment.

### 3. July 11, 2007, Incident

On July 11, 2007, at about 4:03 p.m., Defendant Law was part of an investigation into open-air narcotics sales occurring in the area of 8133 Lurch Street. The investigation was conducted by the St. Louis County Police Department's street enforcement team, which

---

[1] The service records for Wiese's Taser show that it was deployed only once on May 31, 2007.

conducted surveillance of the area of 8133 Lurch to conduct an undercover buy/bust operation. The area of 8133 Lurch was targeted because of citizen complaints of open-air narcotics sales and because of numerous prior narcotics arrests by the street enforcement team.

Other St. Louis County Police Department detectives, including Brian Flanagan, Allen Williams, Thomas Noonan, Michael Bradley, James Stoehner, Eric Walley, and Timothy Cunningham participated in the operation. Flanagan was the undercover officer conducting the drug buy and was outfitted with a department transmitter to allow other officers to monitor the transaction. Defendant Law was part of one of the arrest teams. The arrest teams were assigned to arrest any subjects who took part in the operation after Flanagan gave the code word on the transmitter indicating that a drug sale had occurred.

Before the operation, Flanagan was given U.S. currency from St. Louis County Police Department funds to use in the transaction. The money had been photocopied to note the serial numbers on the bills.

After surveillance and arrest team police officers were in place, Flanagan drove east on Lurch from Martin Luther King Boulevard and observed a black female wearing a black shirt and white shorts standing in the street. Flanagan advised the surveillance and arrest team officers that he was going to talk with the female subject about a drug purchase. The female subject was later identified as Shirley Nettles.

Flanagan parked his car on the south side of the street in front of 8133 Lurch and asked Nettles if she knew where he could get a couple of "dubs." "Dubs" are slang for units

of crack cocaine. Nettles said, "Ya, my boy should be out here any minute." She also told Flanagan that she always looks out for her boy and, in return, he hooks her up.

As Flanagan was talking to Nettles, two male subjects, one wearing a brown shirt and one wearing a red shirt, approached Flanagan's vehicle and asked Nettles if Flanagan was "cool." Nettles said that he was and that she was going to hook him up. The subject wearing the brown shirt was later identified as Plaintiff and the subject wearing the red shirt was identified as Stacy Durham. Plaintiff and Durham told Nettles that they had her back, then they walked in front of Flanagan's car and stood there, continuously looking up and down the street.

A few minutes later, two other black male subjects wearing white shirts walked into the street. Nettles said that they were "her boys," and she walked over to them. The black males wearing white shirts were later identified as Jamarr Trust and Byron Morrow.

After Nettles talked to Jamarr Trust and Morrow, they walked over to Flanagan's car. Morrow asked Flanagan what he was looking for, and Flanagan told him "two dubs," which meant forty dollars worth of crack cocaine. Morrow told Flanagan to give him the money and he would be right back. Flanagan handed Morrow forty dollars.

Morrow walked over to Jamarr Trust, and they made a hand-to-hand transaction. Morrow then walked to the driver's side window of Flanagan's vehicle and handed him several small, off-white chunks of a substance he believed to be crack cocaine. During the transaction, Plaintiff and Morrow continued to look up and down the street.

After the transaction, Flanagan gave the code word, and the arrest teams moved in to make the arrests. Defendant Law arrived at Flanagan's car and arrested Jamarr Trust. Detectives Bradley and Noonan arrested Morrow, who attempted to flee northbound. Detectives Walley and Stoehner arrested Plaintiff, Nettles, and Durham.

During a search of Jamarr Trust, Defendant Law located forty dollars in US currency. The money matched the serial numbers of the bills that had been provided by and photocopied by the St. Louis County Police Department.

Each of the suspects who were arrested were read their Miranda rights.

Based on this incident, Plaintiff was charged with felony sale of a controlled substance–cocaine base. Plaintiff pled guilty to the charge and was sentenced to eight years' imprisonment.

**Discussion**

1. May 25, 2007, Incident

Plaintiff alleges that he was unlawfully seized and arrested by Higginbotham. Plaintiff argues that Higginbotham could not have had probable cause for arresting him simply because he was in a high crime area and looked suspicious.

Plaintiff's unlawful seizure claim is analyzed under the Fourth Amendment. For an investigative Terry-type[2] seizure to be constitutional under the Fourth Amendment, an officer must be aware of "particularized, objective facts which, taken together with rational

---

[2] Terry v. Ohio, 392 U.S. 1 (1968).

inferences from those facts, reasonably warrant suspicion that a crime is being committed." United States v. Martin, 706 F.2d 263, 265 (8th Cir.1983). Although a reasonable suspicion requires more than an "inchoate hunch," the officer need only "articulate some minimal, objective justification for an investigatory stop" in order to comply with the Fourth Amendment. United States v. Fuse, 391 F.3d 924, 929 (8th Cir.2004) (citing United States v. Sokolow, 490 U.S. 1, 7 (1989)). "Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." United States v. Garcia, 23 F.3d 1331, 1334 (8th Cir.1994). When considering the circumstances involved, due weight must be given "to the factual inferences drawn by the law enforcement officer." United States v. Arvizu, 534 U.S. 266, 277 (2002); cf. United States v. Wallraff, 705 F.2d 980, 988 (8th Cir.1983) ("conduct which would be wholly innocent to the untrained observer . . . might acquire significance when viewed by an agent who is familiar with the practices of drug smugglers and the methods used to avoid detection") (internal quotations omitted); Illinois v. Gates, 462 U.S. 213, 232 (1983) (explaining that a court's review of evidence "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement").

Given the overall circumstances, the Court finds that Higginbotham had probable cause to temporarily seize Plaintiff pursuant to his investigation. Plaintiff was standing next to a vehicle very early in the morning in a high crime area. The first time Plaintiff saw Higginbotham he left the area. When Higginbotham drove up to Plaintiff a second time,

Plaintiff was again standing next to the vehicle, and when Higginbotham stopped and approached, Plaintiff began to walk away. Plaintiff became very agitated and acted in a physically confrontational manner. When Higginbotham then asked Plaintiff to identify himself, Plaintiff became abusive. Based on these facts, the Court finds that Higginbotham was justified in making a Terry stop. E.g., Illinois v. Wardlow, 528 U.S. 119, 124 (2000) (Terry stop reasonable where Defendant was present in a high crime area and attempted to flee when police officers arrived). As a result, Plaintiff's claim for unlawful seizure fails as a matter of law.

"It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." Hannah v. City of Overland, Missouri, 795 F.2d 1385, 1389 (8th Cir.1986). "In determining whether probable cause exists to make a warrantless arrest, a court will consider whether, based on the totality of the circumstances, the facts would justify a reasonably cautious police officer's belief that the individual arrested has committed or was committing an offense." Anderson v. Cass County, Mo., 367 F.3d 741, 745 (8th Cir. 2004); see Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

Pursuant to St. Louis County Revised Ordinance § 701.110, "It is unlawful for any person to interfere in any manner with a police officer or other employee of the County in

the performance of his official duties or to obstruct him in any manner whatsoever while performing any duty."

Higginbotham requested that Plaintiff identify himself while conducting an investigation into possible automobile tampering. Plaintiff's refusal to cooperate obstructed and delayed Higginbotham as a public officer in his attempt to discharge his duty. As a result, it was reasonable for Higginbotham to conclude that Plaintiff was in violation of § 701.110 and make the arrest. See Hiibel v. Sixth Judicial Dist. Court of Nevada, Humbolt County, 542 U.S. 177, 181-82 (2004) (arrest after suspect failed to identify himself did not violate Fourth Amendment). Plaintiff's false arrest claim, therefore, fails as a matter of law.

Moreover, Higginbotham is entitled to qualified immunity. "Government officials who perform discretionary functions are entitled to qualified immunity unless their alleged conduct violated clearly established federal constitutional or statutory rights of which a reasonable person in their positions would have known." Wright v. Rolette County, 417 F.3d 879, 884 (8th Cir. 2005). Because Higginbotham did not violate Plaintiff's constitutional rights, qualified immunity applies.

2. May 31, 2007, Incident

Plaintiff alleges that Wiese and Whitson falsely arrested him on May 31, 2007, and that the arrest was made in retaliation for his having previously made a BPS complaint. Plaintiff also claims that Defendants used excessive force in making the arrest because they allegedly Tasered him several times after he complied with their instructions.

A prisoner may not recover damages in a § 1983 suit where the judgment would necessarily imply the invalidity of his conviction, continued imprisonment, or sentence unless the conviction or sentence is reversed, expunged, or called into question by issuance of a writ of habeas corpus. Heck v. Humphrey, 512 U.S. 477, 486-87 (1994); Schafer v. Moore, 46 F.3d 43, 45 (8th Cir. 1995).

In this instance, Plaintiff was arrested after fleeing from Wiese and Whitson, and during flight, shedding evidence that was later used to obtain his conviction. A finding in Plaintiff's favor on his false arrest claim would necessarily imply the validity of his conviction. See Anderson v. Franklin County, Mo., 192 F.3d 1125, 1131, (8th Cir. 1999) (false arrest claim Heck-barred). As a result, Plaintiff's false arrest claim is barred by Heck.

Moreover, the evidence before the Court demonstrates that Wiese and Whitson had probable cause to arrest Plaintiff. Plaintiff began acting suspicious inside the house when he put his left hand into his pocket and tried to leave the living room. Upon questioning, Plaintiff became very agitated. And when Defendants told Plaintiff they were going to arrest him, he knocked Whitson over and fled. Under these circumstances, any reasonable officer would have suspected that Plaintiff was involved in criminal activity. As a result, Plaintiff's false arrest claim fails as a matter of law.

To succeed on his § 1983 retaliation claim, Plaintiff must prove that he engaged in protected activity and that Defendants, to retaliate for the protected activity, took adverse action against Plaintiff that would chill a person of ordinary firmness from engaging in that activity. See Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir.2004), cert. denied, 546 U.S.

860 (2005). Plaintiff has failed to demonstrate that Defendants were motivated by retaliation when they arrested him because he has not provided any evidence in support of his assertions. And the evidence before the Court shows that Plaintiff's behavior was sufficient probable cause for the arrest. As a result, Plaintiff's retaliation claim fails as a matter of law.

Excessive force claims against police officers are analyzed under the Fourth Amendment standard of "objective reasonableness." The reasonableness of a particular use of force depends on the circumstances of each case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989). The Court's "vantage point must be that of a reasonable officer on the scene, not the 20/20 vision of hindsight." Wertish v. Krueger, 433 F.3d 1062, 1066 (8th Cir. 2006). "The calculous of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396–97.

In this case, it is undisputed that Plaintiff had knocked Whitson over and was evading by flight. Wiese ordered Plaintiff to stop and warned Plaintiff that he was going to use the Taser. Despite the warning, Plaintiff continued to run. Wiese used the Taser only once to stop Plaintiff and subdue him. Plaintiff has not introduced any admissible evidence that he was Tasered more than once, and the undisputed evidence from defendants shows otherwise. The Court finds that the use of force was objectively reasonable under the circumstances, as

judged from the perspective of a reasonable officer on the scene at the time the force was applied. As a result, Plaintiff's excessive force claim fails as a matter of law.

Furthermore, Wiese and Whitson are entitled to qualified immunity because Plaintiff has failed to demonstrate that they violated his constitutional rights.

### 3. July 11, 2007, Incident

Plaintiff alleges that he was falsely arrested on July 11, 2007. He says he was inside his mother's apartment when the street enforcement team arrested his brother, and he claims that he was arrested because he asked the arresting police officers why his brother was being arrested.

Plaintiff's allegations are refuted by the undisputed evidence. Plaintiff was arrested after he participated in a drug sale by acting as a lookout. The facts demonstrate that probable cause existed to arrest Plaintiff on July 11, 2007. As a result, the claim fails as a matter of law.

Moreover, Plaintiff was convicted as a result of the July 11, 2007, arrest, and the conviction has not been reversed or called into question by the issuance of a writ of habeas corpus. A finding in Plaintiff's favor on this claim would call into question the validity of his sentence. As a result, Plaintiff's false arrest claim is Heck-barred. See Anderson, 192 F.3d at 1131.

In addition, Defendant Law is entitled to qualified immunity on this claim because probable cause existed for the arrest.

4. Pendent Claims

Defendants are entitled to judgment as a matter of law on each of Plaintiff's federal causes of action. Under 28 U.S.C. § 1367(c)(3), therefore, the Court will dismiss the remaining state law claims without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Craig Higginbotham, Douglas Wiese, Mark Whitson, and Jason Law's motion for summary judgment [Doc. 87] is **GRANTED**.

**IT IS FURTHER ORDERED** that judgment is entered in favor of Defendants Craig Higginbotham, Douglas Wiese, Mark Whitson, and Jason Law on Plaintiff's federal claims.

**IT IS FURTHER ORDERED** that Plaintiff's state law claims are **DISMISSED** without prejudice.

A separate Judgment will be filed with this Memorandum and Order.

Dated this 27th day of January, 2012.

                        */s/ Audrey G. Fleissig*
                        AUDREY G. FLEISSIG
                        UNITED STATES DISTRICT JUDGE